Matter of the Petition of **TERMINAL TRANSPORT COMPANY,** as owner of **THE PATCO,** her engines, etc., and Charles T. Banks, demise charterer of The Patco, in a cause of limitation of, or exoneration from, liability.

**TERMINAL TRANSPORT COMPANY,** as owner of **THE PATOIL,**

v.

**THE ATLANTIC DEALER,** her engines, etc.,

and

The Atlantic Refining Company, Respondents.

**PENNSYLVANIA INDUSTRIAL CHEMICAL CORPORATION,** as owner of cargo aboard The Patoil,

v.

**THE ATLANTIC DEALER,** her engines, etc.,

and

The Atlantic Refining Company, Respondents.

Nos. 453 of 1952 and 145 and 147 of 1953.

United States District Court
E. D. Pennsylvania.

Dec. 16, 1957.

———◆———

Benjamin F. Stahl, Jr., Philadelphia, Pa., for Pennsylvania Industrial Chemical Corp. and Terminal Transport Co., as owner of The Patoil.

George E. Beechwood, Philadelphia, Pa., for Terminal Transport Co., The Patco and Charles T. Banks.

Thomas F. Mount, Philadelphia, Pa., for Atlantic Refining Co.

LORD, District Judge.

These actions arise as a result of a collision between the tanker, Atlantic Dealer (owned and operated by The Atlantic Refining Company), and the barge, Patoil (owned by the Terminal Transport Co.), which was then being towed by the tug, Patco (operated by Charles T. Banks, individually and trading as Banks Towing Line as bareboat charterer, but owned by Terminal Transport Co.). A second barge, Patterson No. 3, was also being towed by the tug Patco bow first on the starboard side of the tug. The barge Patoil (fully loaded with a cargo of low pressure distillate owned by the Pennsylvania Industrial Chemical Corporation), was being towed stern first on the port side of the tug.

At the time of the collision, the flotilla was proceeding down the Delaware River, bound for Chester, and the tanker was proceeding in the opposite direction bound for Fort Mifflin with a full cargo of crude oil. The collision occurred in the Tinicum Range at about 3 o'clock A.M. on May 22, 1952. It was dark but clear with unlimited visibility for lights. The tide was ebbing with a speed of about 1½ knots and there was no appreciable wind. There was no other traffic upon the river at this point which in any way interfered with the maneuvers of the two units. Their lights were first visible to each other approximately 1½ to 2 miles away.

The Court, after trial, examination of the pleadings, and consideration of briefs, makes the following

### Findings of Fact

1. The parties in the above captioned cases (and certain others which were consolidated with it for trial) are as follows:

(a) Terminal Transport Co., owner of the tug Patco, the barge Patoil and the barge Patterson No. 3. (The interest of Terminal Transport Co. has been assigned since this litigation was instituted; the libellant's interest in No. 145 of 1953 has been marked of record to the use of Spencer B. Downey, Jr. and Christine A. Hoefer, attorneys in fact for stockholders of Joseph M. Patterson & Co., Inc.)

(b) Charles T. Banks, bareboat charterer and operator of the tug Patco.

(c) Pennsylvania Industrial Chemical Corporation, owner of a cargo of low pressure distillate aboard the barge Patoil.

(d) The Atlantic Refining Co., owner and operator of the tanker SS Atlantic Dealer.

2. The physical characteristics of the vessels involved in the casualty which gave rise to the above litigation were as follows:

(a) Atlantic Dealer, 504 feet long, 68 feet wide, with a maximum draft of 30.6 feet, 10,900 gross tons, fully loaded with a cargo of crude oil, equipped with radar which was in good operating condition but not used at any material time. She also had a course recorder in good operating condition whose time record was the same as or not more than a minute faster than the bridge clock and whose course recorder was either accurate or showing an error of not more than one degree low. When loaded and proceeding full ahead against a 1½ knot tide, if the engines are put full astern, it takes between 2 and 3 minutes to stop the tanker.

(b) Tug Patco, 68 feet long, 20 feet wide, 105 gross tons, fully manned, equipped and in all respects seaworthy and fit for the service in which she was then engaged.

(c) Barge Patoil, 110 feet long, 30 feet wide, 307 gross tons, loaded with a cargo of low pressure distillate. This vessel had no propelling or steering machinery.

(d) Barge Patterson No. 3, 155 feet long, 35 feet wide, 556 gross tons, without cargo. This vessel had no propelling or steering machinery.

3. The physical conditions at all times material herein were as follows:

(a) The tide was ebbing with a speed of about 1½ knots.

(b) It was dark, but clear, with unlimited visibility for lights.

(c) The characteristics of the ranges of the river with which we are concerned are as follows:

(1) Billingsport Range has a ship channel 800 feet wide, with a cut-off on the north side of the downriver end as this range joins the Tinicum Range.

(2) Tinicum Range has a ship channel 800 feet wide, about 3 miles long, with a course heading of 92 or 272 degrees. In addition to the ship channel, there was an area with a width of 400 feet, both north and south thereof, with sufficient depth of water for the vessels concerned herein, at all times when they were navigating with respect to each other.

(3) Eddystone Range has a ship channel 800 feet wide, with a cut-off on the south side as this channel joins the Tinicum Range, further enlarging the width of the ship channel. It is approximately one mile long with a course heading of 64 or 244 degrees.

4. The tug Patco with the barges Patoil and Patterson No. 3 left Billingsport bound for Chester, at 0245 on May 22, 1952. The flotilla was made up with the tug in the middle and the two barges on her sides, forming an inverted "V" with the stern of the tug extending aft of the sterns of the two barges. The Patoil was on the port side, towed sterned foremost; the Patterson No. 3 was on the starboard side, towed bow foremost. The loaded barge on the port side tended to drag the flotilla to port; it was necessary for the tug to carry about 10 degrees right rudder to make good a straight course. Therefore the heading of the flotilla could not be changed as readily to starboard as to port.

5. The Atlantic Dealer arrived at the Delaware Breakwater on the evening of May 21, 1952, and proceeded up the river under the con of her master. At all material times her engine speed, according to deck and engine bellbooks, was as follows:

| Deck Bellbook | | Engine Bellbook | |
|---|---|---|---|
| Time | Order | Time | Order |
| 0240 | Full ahead | 0239½ | Full ahead |
| 0247 | Half ahead | 0247 | Half ahead |
| 0301 | Full ahead | 0300 | Full ahead |
| 0309 | Stop | | |
| 0310 | Slow ahead | 0310 | Slow ahead |
| 0311 | Stop full astern | 0311 | Stop |
| | | 0311½ | Full astern |
| | | 0311½ | Emergency full astern |
| 0312 | Stop full astern | 0312 | Stop full astern |
| | | 0313 | Stop |
| | | 0313½ | Half ahead |
| 0314 | Stop | 0314 | Stop |
| | General alarm | | |
| 0314½ | Half ahead | | |
| 0315 | Stop | | |

6. According to her Captain, the speeds of the Atlantic Dealer were as follows:

| Engine Order | RPM | Through the Water | Over the Ground (1½ kn. ebb) |
|---|---|---|---|
| Full | 80 | 12.5 | 11. |
| Half | 60 | 9.4 | 7.9 |
| Slow | 40 | 6.3 | 4.8 |

7. After swinging from the Chester to the Eddystone Range, the Atlantic Dealer was at or close to the center of the ship channel as she passed the docks of Sun Ship at Chester at 0300.

8. After swinging from the Eddystone to the Tinicum Range, the Atlantic Dealer slightly overshot the center of the ship channel, as indicated by range lights ahead of her, but was at all times thereafter until the collision, near the center line of the channel on the Pennsylvania side.

9. The Patco and her tow left a dock at Billingsport, headed upriver, and made a turn of 180 degrees and then proceeded down the river.

10. The Patco when a distance of approximately 1½ to 2 miles from the Atlantic Dealer and when in the Tinicum Range was on the New Jersey side of the channel and continued gradually to bear starboard and at the time of the collision was near the center line of the channel on the Pennsylvania side. Both units showed green side lights at all times until shortly before the collision.

11. All four of the vessels involved in the collision were showing the required lights at all material times.

12. Those in charge of the Atlantic Dealer saw the starboard lights of the flotilla while the Atlantic Dealer was on the Eddystone Range, when there was approximately 1½ to 2 miles between the two units.

13. Those in charge of the Patco saw the starboard lights of the Atlantic Dealer while the Patco was in the Tinicum Range and the Atlantic Dealer was on the Eddystone Range and there was a distance of approximately 1½ to 2 miles separating the two units.

14. There were no physical obstructions to prevent personnel of each vessel from seeing the lights of the other while the Atlantic Dealer was on the Eddystone Range and the vessels were about two miles apart.

15. The sequence in which the whistle signals were given was as follows:

Two blasts by the Atlantic Dealer
One blast by the Patco
Two blasts by the Atlantic Dealer
Danger signal of 4 blasts and two blasts by the Atlantic Dealer
Danger signal of 4 blasts and a single blast by the Patco

16. The tug Patco was proceeding at full speed ahead at all material times, making about 5 knots over the ground with the benefit of a 1½ knot favoring ebb tide.

17. The Atlantic Dealer was proceeding with her engines on full speed ahead and was making 11 knots over the ground at the time her first signal was sounded.

18. When the first signal, a two-blast by the tanker, was sounded, the two units were approximately 1½ miles apart.

19. There was no reason why this signal should not have been heard, and heard correctly, if those in charge of the Patco had been attentive to their duties.

20. There was no reason why the answering one-blast signal from the Patco should not have been heard if those in charge of the Atlantic Dealer had been attentive to their duties.

21. There was no reason why the two units should not thereafter have been maneuvered with respect to each other

by appropriate signals and helm orders so as to avoid collision.

22. The collision could have been averted by both vessels timely reversing their engines when the cross signals were sounded and disagreement as to the manner of passing was or should have been apparent.

23. No change in engine speed was ordered by the tanker until after the Atlantic Dealer had given her second two-blast signal and her personnel had become concerned, after waiting about one minute, without hearing the one-blast signal which was given by the tug. The engines of the Atlantic Dealer were then ordered slow ahead, as Captain Barr noticed a red light on the tug. This was more pronounced as the tug put her rudder hard right, resulting in changing her heading from approximately 270 degrees to 305 degrees at the time of the collision and placing her directly in the path of the Atlantic Dealer. The tanker then ordered her engines stopped and full astern and sounded the danger signal. The tug also sounded a danger signal. The rudder of the Atlantic Dealer was kept amidship until immediately before the collision; it was then ordered hard right, but no appreciable change in the tanker's heading was effected thereby. At the time of the collision, the Atlantic Dealer was moving forward, but very slowly.

24. The bow of the Atlantic Dealer collided with and knifed into the port quarter of the Patoil, approximately 30 feet from her stern as she was being towed, at about a 45 degree angle.

25. This collision occurred north of the middle of the ship channel on the Tinicum Range approximately 750 yards to the west of buoy "3T"; the time of the collision was just before 0313 engine room time, just before 0314 pilot house time and just before 0315 course recorder time.

26. The consequences of the collision were as follows:

(a) The barge Patoil suffered severe hull damage.

(b) The tanks of the Patoil were ruptured and a quantity of the cargo, owned by Pennsylvania Industrial Chemical Corporation, was lost into the river.

(c) The tug Patco was squeezed between the two barges, her stern was depressed, she listed, took on water and sank.

27. There was no other river traffic affecting or interfering with the maneuvers of the two units and no abnormal physical conditions which in any way affected their maneuvers.

Conclusions of Law

1. The Court has jurisdiction of the subject matter and of the parties to the within actions.

2. The Narrow Channel Rule applies to the Tinicum Range of the Delaware River.

3. The Atlantic Dealer was at fault in the following respects:

(a) Failing to be and remain on her own starboard side of the channel after entering the Tinicum Range.

(b) Failing to hear the one-blast signal which was sounded by the Patco.

(c) Failing to slow her engines and to be alerted when those in charge of her did not hear an answer to the tanker's first two-blast signal.

(d) Sounding a cross signal of two blasts following the one-blast signal by the tug Patco.

(e) Failing to stop and reverse her engines timely when there was no assent to the suggested starboard-to-starboard meeting and failing to do so immediately when a cross signal was given by the Patco.

(f) Permitting her heading to swing to starboard, in contradiction to her own suggestion of a starboard-to-starboard meeting.

(g) Failing thereafter to direct her course to starboard when it was, or should have been, apparent to those in charge of her that the tug was committed to a port-to-port meeting.

(h) Continuing with unreduced speed after danger became apparent.

4. The Patco was at fault in the following respects:

(a) Failing to turn to starboard more promptly and effectively after suggesting a port-to-port meeting when the Atlantic Dealer appeared to be proceeding in the Pennsylvania half of the channel.

(b) Failing to hear, or to hear correctly, the initial two-blast signal from the tanker.

(c) Improperly sounding a cross signal.

(d) Failing to stop and reverse her engines immediately when cross signals were sounded by the two units.

(e) Going hard right into the path of the Atlantic Dealer at full speed.

(f) Continuing with unreduced speed after danger became apparent.

5. The faults of Atlantic Dealer and Patco were both directly producing causes of the collision which resulted and both vesssels are responsible for the consequences thereof.

6. Terminal Transport Co., owner of the Patco, did not participate in the operation of the tug and should be exonerated from any in personam liability.

7. Charles T. Banks, bareboat charterer of the tug Patco is entitled to limit his liability to the value of the tug Patco following the casualty, and her pending freight.

8. Pennsylvania Industrial Chemical Corporation, as owner of the cargo aboard the Patoil, was in no way at fault or causally related to the events which caused the loss of some of its cargo.

9. The barge Patoil and those in charge of her were not charged or concerned with navigational maneuvers and no acts or omissions on the part of her crew in any way caused or contributed to the collision.

10. A decree may be entered jointly against Charles T. Banks and The Atlantic Refining Co. and in favor of Pennsylvania Industrial Chemical Corporation and in favor of Spencer B. Downey, Jr. and Christine A. Hoefer, Attorneys in fact for stockholders of Joseph M. Patterson & Co., Inc., assignees of Terminal Transport Co.

The parties will submit appropriate decrees, with provision for reference to the Commissioner, if they are not able to agree upon damages among themselves within 60 days from the date of these Findings of Fact and Conclusions of Law.